# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>PAYA HOLDINGS INC., AARON COHEN, JEFFREY HACK, DEBORA BOYDA, ONI CHUKWU, MICHAEL J. GORDON, KJ MCCONNELL, COLLIN ROCHE, SID SINGH, ANNA MAY TRALA, and STUART YARBROUGH,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jordan Wilson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Paya Holdings Inc. ("Paya" or the "Company") and the members of Paya's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Paya to Nuvei Corporation ("Nuvei") (the "Proposed Transaction").

2. On January 8, 2023, Paya entered into an Agreement and Plan of Merger with Nuvei, and Nuvei's wholly owned subsidiary, Pinnacle Merger Sub Inc. ("Purchaser") (the "Merger Agreement"). Under the terms of the Merger Agreement, each Paya shareholder will have the right to receive $9.75 per share in cash, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on January 24, 2023.

3. On January 24, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Paya stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Raymond James & Associates, Inc. ("Raymond James"); and (iii) potential conflicts of interest faced by Raymond James and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Paya stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5. The Tender Offer is currently scheduled to expire at one minute after 11:59 p.m. (12:00 midnight), New York City time, on February 21, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Paya's other shareholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Paya's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Paya common stock.

10. Defendant Paya is a Delaware corporation, with its principal executive offices located at 303 Perimeter Center North, Suite 600, Atlanta, Georgia 30346. Paya's shares trade on the Nasdaq Capital Market under the ticker symbol "PAYA."

11. Defendant Aaron Cohen ("Cohen") has been Chairman of the Board and a director of the Company at all relevant times. Defendant Cohen is a Managing Director of GTCR LLC ("GTCR"), which holds a majority ownership interest in GTCR-Ultra Holdings, LLC ("Ultra Holdings"). Ultra Holdings stands to receive approximately $20 million in connection with the

early termination of the tax receivable agreement entered into in connection with the closing of Paya's merger with FinTech Acquisition Corp. III ("FinTech") (the "TRA").

12. Defendant Jeffrey Hack ("Hack") has been Chief Executive Officer and a director of the Company at all relevant times. Defendant Hack will receive $19,586,256 in connection with the accelerated vesting of his Class B and Class C units in Ultra Holdings in connection with the Proposed Transaction.

13. Defendant Debora Boyda has been a director of the Company at all relevant times.

14. Defendant Oni Chukwu has been a director of the Company at all relevant times.

15. Defendant Michael J. Gordon has been a director of the Company at all relevant times.

16. Defendant KJ McConnell ("McConnell") has been a director of the Company at all relevant times. Defendant McConnell is a Managing Director of GTCR.

17. Defendant Collin Roche ("Roche") has been a director of the Company at all relevant times. Defendant Roche is a Managing Director of GTCR.

18. Defendant Sid Singh has been a director of the Company at all relevant times.

19. Defendant Anna May Trala ("Trala") has been a director of the Company at all relevant times. Defendant Trala is Chief Financial Officer and a Managing Director of GTCR.

20. Defendant Stuart Yarbrough ("Yarbrough") has been a director of the Company at all relevant times. Defendant Yarbrough stands to receive approximately $807,404 in connection with the vesting of his Class C units in Ultra Holdings in connection with the Proposed Transaction.

21. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

22.     Paya is an independent integrated payments and commerce platform providing card, Automated Clearing House, and check payment processing solutions via software to middle-market businesses in the U.S.  The Company's solutions integrate with customers' core business software to enable payments acceptance, reconcile invoice detail, and post payment information to their core accounting systems.  The Company enables its customers to collect revenue from their consumer and business customers with a seamless experience and high-level of security across payment types.

**The Proposed Transaction**

23.     On January 9, 2023, Paya announced that it had entered into the Proposed Transaction, stating, in relevant part:

> MONTREAL and ATLANTA, Jan. 09, 2023 (GLOBE NEWSWIRE) -- Nuvei Corporation ("Nuvei" or the "Company") (Nasdaq: NVEI) (TSX: NVEI), the Canadian fintech company, and Paya Holdings Inc. ("Paya") (Nasdaq: PAYA), a leading provider of integrated payment and commerce solutions in the U.S., today announced that they have entered into a definitive agreement whereby Nuvei will acquire Paya in an all-cash transaction at USD $9.75 per share for total consideration of approximately $1.3 billion.
>
> "The proposed acquisition of Paya is a powerful next step in the evolution of Nuvei, creating a preeminent payment technology provider with strong positions in global eCommerce, Integrated Payments and business-to-business ("B2B")," said Philip Fayer, Nuvei's Chair and Chief Executive Officer. "The proposed transaction will combine two people-first, technology-led, high-growth payment platforms. It will accelerate our integrated payment strategy, diversify our business into key high-growth non-cyclical verticals with large addressable end markets and enhance the execution of our growth plan."
>
> "We are pleased to have reached this transaction with Nuvei, which is a testament to the incredible talent at Paya, and will deliver immediate and significant cash value to Paya shareholders," said Jeff Hack, Paya's Chief Executive Officer. "We continue to see strong momentum in our high-growth and underpenetrated middle market partners in durable end-markets, and believe that Nuvei's resources will

enable us to continue our mission of solving complex business problems with easy-to-use payment solutions."

**Strategic Rationale and Benefits of the Transaction**

- Enhances Nuvei's ability to execute on high-growth integrated payment opportunities

    - Paya's deep software integrations with 300+ independent software vendor ("ISV") platforms and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global software-led market opportunity
    - Plugs Paya's highly complementary integrated payment capabilities into Nuvei's global technology platform for an enhanced customer proposition and incremental growth opportunities
    - Integrated payments is the highest-growth card payments distribution channel in the U.S.[1] For 2021, roughly 41% of new merchants in the US were signed from the integrated payments channel[2]

- Diversifies Nuvei's business across high-growth, underpenetrated and non-cyclical end markets each with a large estimated total addressable market ("TAM")

    - Paya has a strong footprint in key non-cyclical verticals, including B2B goods and services (estimated $1.2 trillion TAM)[3], healthcare (estimated $235 billion TAM)[4], non-profit and education (estimated $145 billion TAM)[4], and government and utilities (estimated $130 billion TAM)[4]

- Expands Nuvei's capabilities into large and growing B2B

    - Paya's deep enterprise resource planning (ERP) integrations and end-to-end commerce solutions position Nuvei to capitalize on the domestic and global B2B opportunity
    - The U.S. B2B payments middle market is expected to grow at a 10%+ compound annual growth rate (CAGR) (2019-2026) with an estimated market size of $2.3 trillion in 2026[3]

- Amplifies Nuvei's existing growth strategy
    - Establishes Paya's leading ISV and B2B capabilities in Nuvei's global markets
    - Accelerates growth by offering Nuvei's solutions into Paya's partners and customers in the U.S.
    - Broadens strong ISV and eCommerce capabilities to enter new markets
    - Expands M&A scope to include ISV, B2B and proprietary software opportunities

- Reinforces Nuvei's compelling financial profile

6

- On a combined basis[5] for the last twelve months ("LTM") ended September 30, 2022, Combined Total volume[6] was approximately $167 billion, Combined Revenue[7] was approximately $1.1 billion, and Combined Adjusted EBITDA[7] was approximately $429 million (which does not include up to $21 million of estimated run-rate cost synergies expected to be achieved within 24 months)[8], and Combined Adjusted EBITDA less capital expenditures was approximately $380 million[7]. Nuvei's LTM net income and revenue was $65 million and $835 million, respectively, and Paya's LTM net income and revenue was $9.5 million and $277 million, respectively.

**Transaction Details**

The transaction has been unanimously approved by each party's Board of Directors, and the Board of Directors of Paya intends to recommend the transaction to Paya's stockholders. Pursuant to the terms of the agreement, Nuvei will commence a tender offer to acquire all outstanding shares of Paya for $9.75 per share in cash (approximately $1.3 billion of enterprise value ("EV") for Paya). The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Paya's outstanding shares, the expiration or termination of the antitrust waiting period, and other customary conditions. Following the successful completion of the tender offer, Nuvei will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction is expected to close by the end of the first quarter of 2023.

The purchase price represents a 25% premium to the January 6, 2023 closing price and a 30% premium to the 90-day volume-weighted average share price ("VWAP"). The implied transaction multiple is approximately 13x EV/2023E Adjusted EBITDA[9] based on consensus estimates for Paya (once the full benefit of expected synergies is taken into account). Paya's net income for the LTM period ended September 30, 2022 was $9.5 million.

Nuvei expects to finance the acquisition with a combination of cash on hand, an existing credit facility and a new committed $600 million first lien secured credit facility (the "New Credit Facility").[10]

Nuvei's net leverage ratio, defined as the ratio of consolidated net debt outstanding (outstanding credit facilities less cash), to consolidated adjusted EBITDA, calculated in accordance with the terms of Nuvei's credit agreement, is expected to be less than 3x upon (and giving effect to) the closing of the transaction.

The proposed transaction is expected to deliver up to $21 million of estimated run-rate cost synergies within 24 months, as well as provide attractive revenue synergy upside potential by bringing Nuvei's global capabilities as additional offerings to

7

Paya's partners and customers. The transaction is expected to be accretive to adjusted EPS in 2023.

An investment fund affiliated with GTCR LLC has entered into a tender and support agreement pursuant to which it has agreed, among other things, to tender its Paya shares pursuant to the tender offer, subject to certain conditions. This stockholder currently represents approximately 34% of the outstanding shares of Paya's common stock.

The Merger Agreement also includes customary termination provisions for both Nuvei and Paya, and provides that, in connection with the termination of the Merger Agreement under specified circumstances, including termination by Paya to accept and enter into an agreement with respect to a superior proposal, Paya will pay Nuvei a termination fee of approximately $38 million.

**Advisors**

Barclays Capital Inc. is serving as the lead financial advisor to Nuvei. BMO Capital Markets, RBC Capital Markets and Evercore Group LLC have also provided financial advice to Nuvei.

Bank of Montreal and Royal Bank of Canada have provided committed financing to Nuvei. Davis Polk & Wardwell LLP and Stikeman Elliott LLP are serving as legal advisors.

J.P. Morgan Securities LLC and Raymond James & Associates, Inc. are serving as financial advisors to Paya and Kirkland & Ellis LLP is serving as Paya's legal advisor.

**The Materially Incomplete and Misleading Recommendation Statement**

24.     On January 24, 2023, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC. The Recommendation Statement, which recommends that Paya stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by J.P. Morgan and Raymond James; and (iii) potential conflicts of interest faced by Raymond James and Company insiders.

*Material Misrepresentations and/or Omissions Concerning Paya's Financial Projections*

25. The Recommendation Statement fails to disclose material information concerning the financial projections for Paya.

26. For example, the Recommendation Statement sets forth that at a December 20, 2022 Board meeting, Company management "presented the Company's updated standalone financial plan, noting updates since the plan had last been presented to the Board of Directors in June 2022 and the Board of Directors approved the Company's updated standalone financial plan for use in consideration of any transaction with Nuvei." Recommendation Statement at 22. The Recommendation Statement, however, fails to disclose a summary of the June 2022 financial projections reviewed by the Board, as well as a quantification of the updates made to the June 2022 projections in arriving at the final projections relied upon by J.P. Morgan and Raymond James for their fairness opinions.

27. The Recommendation Statement also fails to disclose all line items underlying the Company's Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Raymond James' Financial Analyses*

28. The Recommendation Statement fails to disclose material information concerning J.P. Morgan's and Raymond James' financial analyses.

29. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Company's revenue during the terminal year or clarification that 2026 revenue was used as the terminal year revenue; (ii) the terminal values for the Company; and (iii) the inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%.

30. With respect to J.P. Morgan's *Public Trading Multiples* and *Selected Transaction Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each company and transaction analyzed, respectively.

31. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Recommendation Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

32. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose a quantification of: (i) the unlevered free cash flows of the Company for calendar years ending December 31, 2023 through 2026 utilized by Raymond James for its analysis and the underlying line items; (ii) calendar year 2026 EBITDA used to calculate the terminal values for the Company; (iii) the Company's terminal values; and (iv) the inputs and assumptions underlying the discount rates ranging from 9% to 11%.

33. With respect to Raymond James' *Selected Companies Analysis* and *Selected Transaction Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each company and transaction analyzed, respectively.

*Material Misrepresentations and/or Omissions Concerning Raymond James' and Company Insiders' Potential Conflicts of Interest*

34. The Recommendation Statement fails to disclose material information concerning Raymond James' potential conflicts of interest.

35. The Recommendation Statement fails to disclose the details of any services Raymond James has provided GTCR and/or Ultra Holdings and their affiliates in the two years prior to the delivery of its fairness opinion, and any compensation Raymond James or its affiliates have received for such services provided.

36. The Recommendation Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

37. Specifically, the Recommendation Statement sets forth that members of the Company's management, including defendant Hack, hold unvested Company options and restricted stock units ("RSUs") that will rollover into options and RSUs of Nuvei upon completion of the Proposed Transaction. The Recommendation Statement, however, fails to disclose the details of rollover-related discussions and negotiations that occurred between Company directors and officers and Nuvei, including with respect to defendant Hack, who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Nuvei's proposals or indications of interest mentioned management retention or the option to rollover equity in the combined company.

38. In addition, the Recommendation Statement fails to disclose the details of any protective measures the Board enacted to safeguard the Company's public shareholders' interests in the Proposed Transaction, including with respect to the Board's decision to allow defendant Hack "to lead day-to-day engagement with Nuvei on behalf of the Board" (*id.* at 19), despite his conflict of interest as a participant in the Proposed Transaction via the rollover of his equity in the Company.

39. The Recommendation Statement also fails to disclose material information related to the TRA. Specifically, the Company's January 9, 2023 8-K announcing the Proposed Transaction states that the payment of the early termination fee is approximately $19.5 million. Yet, the Recommendation Statement states that Raymond James assumed "[a]t the direction of the Company" that the payment due for early termination of the TRA was approximately $20 million. *See* Recommendation Statement at 41. Additionally, the Recommendation Statement sets forth that "[o]n two occasions, the members of the Board of Directors who were not affiliated with or otherwise beneficiaries of the TRA convened in executive session with representatives of Kirkland

to review the contractual early termination payment required under the TRA." *Id.* at 17. The Recommendation Statement fails to disclose: (i) the exact amount of the early termination fee that Ultra Holdings expects to receive in connection with the TRA termination; and (ii) the details of the TRA-related discussions that occurred on the two occasions that the unaffiliated Board members met.

40. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of J.P. Morgan," "Opinion of Raymond James," "Background of the Offer and Merger," and "Arrangements between the Company and Its Executive Officers, Directors and Affiliates" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Paya will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

41. Plaintiff repeats all previous allegations as if set forth in full.

42. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Paya stockholders to tender their shares in the Tender Offer.

43. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

44. Section 14(d)(4) of the Exchange Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

45. SEC Rule 14d-9 sets forth, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

46. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

47. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

48. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

49. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Paya, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no

adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **COUNT II**

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

52. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Paya stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the Recommendation Statement misrepresented and/or omitted material facts concerning the Company's financial projections, J.P. Morgan's and Raymond James' financial analyses, and potential conflicts of interest faced by Raymond James and Company insiders.

53. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

54. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff

has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of Paya within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Paya, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

59. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Paya stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Paya, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 31, 2023                    **ACOCELLI LAW, PLLC**

By */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*